T.C. Summary Opinion 2001-86

UNITED STATES TAX COURT

PRINCESS STEPHAN OBRIOT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5531-99S.                    Filed June 13, 2001.

Princess S. Obriot, pro se.

Ross Greenberg, for respondent.

PAJAK, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $1,692 and $2,152 in petitioner's Federal income tax for the years 1995 and 1996, respectively.  Respondent conceded that petitioner would be entitled to the earned income credit for the years in issue based solely on her income level.  Respondent also conceded that petitioner is entitled to a dependency exemption deduction in 1995 for her daughter Ayla Olsen (Ayla).

We must decide whether petitioner is entitled to the earned income credit based on being an individual with a qualifying child in 1995 and 1996.  We must also decide whether petitioner is entitled to head of household filing status in 1996, rather than single status as respondent determined.

Some of the facts in this case have been stipulated and are so found.  Petitioner resided in Jonesboro, Georgia, at the time she filed her petition.

Petitioner gave birth to her daughter, Ayla, on July 15, 1994.  To set the stage, in petitioner's words, she found herself "shocked with being by myself and a single parent all of a sudden."  She also said that "To adjust to that was very difficult" so she turned to her parents.

During 1995 and 1996, petitioner and her infant daughter shared a home with petitioner's parents, Peter and Katherine

Stephan (parents/grandparents).  Petitioner resided in the basement, which had a separate entrance.  When she moved into her parents' household in January 1995, petitioner signed an agreement to pay rent to her parents in the amount of $200 per month for herself and Ayla, as well as to pay one-third of the utility bills.

Petitioner was not always able to make the rent payments, but the parties shared the household expenses.  During the years in issue, petitioner and her parents shared the expenses for taxes and insurance for the home, utilities, and food. Petitioner contributed at least 50 percent towards the maintenance and upkeep of the household.  She paid all the expenses relating to her daughter.  When respondent questioned petitioner as to how she paid for her and her daughter's expenses petitioner explained as follows:

> I'm also quite capable of getting a loan, which I did, * * *.  I'm a poor person.  I don't deny that. I'm still poor.  But I am capable of buying things.  It just means I have nothing left over. * * * I'm not the only person in this country that lives hand-to-mouth.

Petitioner had adjusted gross income (in rounded off numbers) of $4,984 in 1995 and $8,680 in 1996.  Ayla's grandparents reported adjusted gross income of $51,902 in 1995 and $60,002 in 1996.  The grandparents did not claim Ayla as a dependent, nor did they claim her as a qualifying child in either of the years at issue.

Petitioner claimed the earned income credit in 1995 and 1996 based on having a qualifying child, her daughter Ayla. Petitioner claimed head of household filing status in 1996. Respondent does not contend that Ayla is not a qualifying child with respect to petitioner. Respondent disallowed the earned income credit because respondent contends that Ayla is a qualifying child with respect to the grandparents, who have a higher modified adjusted gross income than petitioner. Respondent also determined that petitioner's filing status was single.

Section 32 provides that an eligible individual is allowed a credit calculated as a percentage of the individual's earned income. An eligible individual includes an individual with a qualifying child. Sec. 32(c)(1). However, if two or more individuals would be treated as eligible individuals with respect to the same qualifying child for taxable years beginning in the same calendar year, only the individual with the highest modified adjusted gross income for such taxable years shall be treated as an eligible individual with respect to such qualifying child. Sec. 32(c)(1)(C).

In 1995 and 1996, the years in issue, the definition of "qualifying child" under section 32(c)(3) was the same definition originally enacted on November 5, 1990, in the Omnibus Budget Reconciliation Act of 1990 (1990 Act), Pub. L. 101-508, sec.

11111(a), 104 Stat. 1388-408. Under this definition, a "qualifying child" is one who satisfies a relationship test, a residency test, and an age test, and for whom the taxpayer satisfies an identification requirement. Sec. 32(c)(3)(A).

However, in 1998, in the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 6021, 112 Stat. 823, Congress struck the identification requirement from the definition of "qualifying child" under section 32(c)(3)(A). Pursuant to this amendment, the definition of "qualifying child" now includes only the relationship test, the residency test, and the age test. Section 6021(c)(2) of RRA 1998 states that amendments to section 32(c)(3) are effective as if included in the amendments made by section 11111 of the 1990 Act, which is effective for tax years beginning after December 31, 1990. 1990 Act, sec. 11111(f), 104 Stat. 1388-413.

With respect to Ayla, the relationship, residency, and age tests are satisfied for petitioner and the grandparents. Ayla is petitioner's daughter and the grandparents' granddaughter. Sec. 32(c)(3)(B)(i). Ayla had the same principal place of abode in the United States as petitioner and the grandparents for more than one-half of each taxable year. Sec. 32(c)(3)(A)(ii), (E). Ayla had not attained the age of 19 by the close of either of the years in issue. Sec. 32(c)(3)(C)(i). However, the grandparents did not meet the identification requirement with respect to Ayla

because they did not include Ayla's name, age, and taxpayer identification number on their return. Sec. 32(c)(3)(D). Petitioner satisfied this requirement.

Petitioner contends that she is entitled to the claimed earned income credit because she complied with the tax laws as they were in effect when she filed her income tax returns for the years in issue. However, because the RRA 1998 amendment to section 32(c)(3) applies retroactively, Ayla, who satisfied the relationship test, the residency test, and the age test with respect to the grandparents, is a qualifying child of the grandparents for tax years 1995 and 1996 under the statute as amended. Both petitioner and the grandparents could be treated as eligible individuals with respect to Ayla. Under section 32(c)(1)(C), the grandparents, whose modified adjusted gross income in 1995 and 1996 was higher than petitioner's modified adjusted gross income for the same years, would be treated as the eligible individuals with respect to Ayla in 1995 and 1996. Therefore, petitioner is not eligible for the earned income credit based on a qualifying child. Because of the identification requirement which remains in section 32(c)(3)(D), the grandparents would not receive the credit either.

It is a well-established constitutional rule that Congress may provide for the retroactive operation of income tax legislation which it enacts, subject to various qualifications.

Rose v. Commissioner, 55 T.C. 28, 31 (1970). Such retroactive application violates the Due Process Clause of the Fifth Amendment when "'retroactive application is so harsh and oppressive as to transgress the constitutional limitation.'" United States v. Carlton, 512 U.S. 26, 30 (1994) (quoting Welch v. Henry, 305 U.S. 134, 147 (1938)). According to the Supreme Court in Carlton the "harsh and oppressive" standard is the same as the "'prohibition against arbitrary and irrational legislation' that applies generally to enactments in the sphere of economic policy." Id. (quoting Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 733 (1984)). Therefore, retroactive tax provisions will be upheld if they are supported by a "legitimate legislative purpose furthered by rational means". Id. at 30-31.

We understand petitioner's frustration because she complied with the requirements of section 32(c)(3) as they existed when she filed her Federal income tax returns for 1995 and 1996, and we are particularly sympathetic to her position. However, we are compelled to follow our recent opinion in Sutherland v. Commissioner, T.C. Memo. 2001-8. In that case, this Court concluded that the 1998 retroactive amendment of section 32(c)(3) was a clarification of existing law and upheld it as constitutional. Accordingly, for the reasons set forth in Sutherland, we sustain respondent's determination. If

petitioner, in view of her low income, is faced with financial hardship in paying the taxes and interest assessed on the deficiencies for 1995 and 1996, she should consider submitting to respondent an offer in compromise based on inability to pay and requesting the abatement of interest on the deficiencies.

Respondent also contends that petitioner was not eligible to claim head of household filing status in 1996. Section 2(b), in relevant part, defines a head of household as an unmarried taxpayer who maintains as her home a household which constitutes for more than one-half of the taxable year the principal place of abode of her daughter. Sec. 2(b)(1)(A)(i). The taxpayer is considered as maintaining a household only if over half of the cost of maintaining the household is furnished by the taxpayer. Sec. 2(b)(1). "The expenses of maintaining a household include property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance, and food consumed on the premises." Sec. 1.2-2(d), Income Tax Regs. Based on the evidence, we find that petitioner paid more than one-half of the above expenses. Accordingly, we hold that petitioner is entitled

to file as head of household in 1996.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>